# IN THE SUPREME COURT OF TEXAS

══════════
No. 12-0539
══════════

KEVIN T. MORTON, PETITIONER,

v.

HUNG NGUYEN AND CAROL S. NGUYEN, RESPONDENTS

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
══════════════════════════════════════════════

JUSTICE BOYD, joined by JUSTICE WILLETT and JUSTICE LEHRMANN, concurring in part and dissenting in part.

The Court is bothered that a literal application of Subchapter D of Chapter 5 of the Texas Property Code "result[s] in a windfall" to purchasers under an executory contract. *Ante* at ___. But our task here is to apply the statute as written, and it is not within our power or our role to resolve the Court's concern. As the Court has said repeatedly, even quite recently:

- "The aim of statutory construction is to determine and give effect to the Legislature's intent[.]" *CHCA Woman's Hosp., L.P., v. Lidji*, — S.W.3d —, —, 2013 WL 3119577, at *3 (Tex. June 21, 2013);

- It is "cardinal law" that we begin with the plain language and common meaning of the words in the statute. *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012);

- We "begin (and often end) with the Legislature's chosen language," *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 653 (Tex. 2013), because "the truest manifestation of what lawmakers intended is what they enacted." *Combs v. Roark Amusement & Vending, L.P.*, — S.W.3d —, —, 2013 WL 855737, at *2 (Tex. March 8, 2013);

• The Legislature's "voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, 'the judge's inquiry is at an end.'" *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)); and

• "[U]nambiguous text equals determinative text (barring an absurd result)." *In re Office of Attorney Gen.*, — S.W.3d —, —, 2013 WL 854785, at *4 (Mar. 8, 2013).[1]

We have announced these principles of statutory construction not because we always agree with the Legislature's policy choices or because it is easier to avoid making policy choices ourselves. To the contrary, applying the Legislature's policy choices is often the most difficult part of the judiciary's job, particularly when we disagree with those choices. But "we do not pick and choose among policy options on which the Legislature has spoken." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 690 (Tex. 2007). Upholding the Legislature's policy choices is foundational to the judiciary's role within the constitutional separation of powers among the three branches, and necessary to protect the liberty that our unique system of government guarantees. The philosopher Montesquieu explained long ago:

> [T]here is no liberty if the powers of judging be not separated from the legislative and executive powers. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would be the legislator. Were it joined to the executive power, the judge might behave with all the violence of the oppressor.

---

[1] *See also, e.g.*, *Rachal v. Reitz*, — S.W.3d. —, —, 2013 WL 1859249, at *3 (Tex. May 3, 2013); *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507, 511 (2012); *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012); *In re Lopez*, 372 S.W.3d 174, 176 (Tex. 2012); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *Am. Zurich Ins. Co. v. Samudio*, 370 S.W.3d 363, 368 (Tex. 2012); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

C. Montesquieu, The Spirit of Laws 202 (T. Nugent trans., D. Carrithers ed. 1977) (T. Nugent trans. 1st ed. 1750).

In the present case, a majority of the Court holds that a purchaser's recovery under Subchapter D of Chapter 5 of the Texas Property Code must be reduced by the value of the benefits the purchaser received from the seller. That may be good policy, but the Code repeatedly states that the purchaser is entitled to "receive a *full* refund of *all payments* made to the seller." Tex. Prop. Code §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2) (emphases added). Because I cannot join the Court's holding without ignoring this language altogether, I respectfully dissent from this part of the Court's opinion.

## I.
### Statutory Remedy under the Property Code

In Subchapter D of Chapter 5 of the Texas Property Code, the Legislature has provided that a seller's failure to make certain disclosures before entering into an executory contract for conveyance of real property (i.e., a contract for deed)

> *entitles* the purchaser to cancel and rescind the executory contract and receive a *full* refund of *all payments* made to the seller.

Tex. Prop. Code §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2) (emphases added). The seller's violation of yet another provision

> *entitles* the purchaser to cancel and rescind the executory contract and receive from the seller:

> (A) the return of *all payments* of *any kind* made to the seller under the contract; and

> (B) reimbursement for:

3

(i) any payments the purchaser made to a taxing authority for the property; and

(ii) the value of any improvements made to the property by the purchaser.

*Id.* §§ 5.085(c)(2) (emphases added).

Despite this unambiguous language, the Court holds that a seller's violation of these statutes does not entitle the purchaser to receive "a full refund of all payments made to the seller" or "the return of all payments of any kind made to the seller." Instead, the Court holds that the purchaser is entitled to receive the difference between the payments the purchaser made and the "value of the [purchaser's] interim occupation of the property." *Ante* at ___. Because, in the Court's view, the purchaser is "liab[le] for the rental value of the property during their occupation," *id.*, the purchaser cannot receive "a *full* refund of *all* payments made to the seller." For the reasons discussed below, I believe the Court has strayed from both its role and its principles of statutory construction in this case.

**A.     No Punitive Purpose?**

First, the Court asserts that its construction of the statute is appropriate because the statute's "cancellation-and-rescission remedy is not intended to be punitive." *Ante* at ___. Ignoring for a moment the lack of support for this assertion, and the precedent to the contrary, the best indication of what the Legislature intended is found in the words the Legislature chose. *See, e.g.*, *Combs*, — S.W.3d at —, 2013 WL 855737, at *2. It is true that, when a statute that requires certain conduct is "silent on the effect of noncompliance, we must consider the purpose of the statute" to determine the consequences of the violation. *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex. 1992); *see also AHF-Arbors at Huntsville I, LLC v. Walker Cnty. App. Dist.*, ___ S.W.3d ___, ___ 2012 WL 2052948,

4

at *3 (Tex. June 8, 2012) (quoting *Hines*). But here, the Legislature is not silent on the effect of a seller's noncompliance with the statute: it expressly states that, when the seller fails to comply with the statute, the purchaser is entitled to "a full refund of all payments made to the seller." Regardless of whether the Legislature intended this relief to be "punitive," it is the relief the Legislature expressly provided and thus the relief that the courts must award.

In any event, the Court provides no support for its assertion that the Legislature does not intend this statute's remedies to be "punitive."[2] This Court has previously held that Subchapter D's liquidated damages provision is, in fact, "penal in nature" and "punitive rather than compensatory." *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 433–34 (Tex. 2005). The Court also previously noted that the severity of the statute's damages formula "would in many instances impose a fine far beyond the damages that a purchaser is likely to suffer." *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004).

Finally, even if the Legislature did not intend sections 5.069, 5.070, and 5.072 to be punitive in nature, I am not convinced that permitting recovery of "all payments made to the seller" is

---

[2] The Court states, "Like the [Texas Deceptive Trade Practices–Consumer Protection Act's (DTPA)] restoration remedy, Subchapter D's cancellation-and-rescision remedy is not intended to be punitive—it merely provides the buyer the option of unwinding the transaction," citing *Cruz v. Andrews Restoration, Inc*., 364 S.W.3d 817, 826 (Tex. 2012). *Ante* at ___. In *Cruz*, the Court held that the "restor[ation]" provision of the DTPA, section 17.50(b)(3), was not punitive because "'punishment'" under the DTPA "is accomplished through the statute's liability and damages provision—prohibiting deceptive practices and allowing recovery of actual damages, mental anguish damages, treble damages for knowing violations, and attorney's fees." *Id.*; *see also* TEX. BUS. & COM. CODE § 17.50(b)(1) (authorizing the award of economic damages plus mental anguish damages and treble damages when appropriate); *id.* § 17.50(d) (attorney's fees). *Cruz* did not hold, or indicate in any way, that the provisions of Subchapter D are non-punitive in nature, *see Cruz*, 364 S.W.3d at 826, and the Property Code provisions at issue here *are* the statute's liability and damages provisions (though they are expressly nonexclusive). *See* TEX. PROP. CODE §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2). In addition to the differences discussed below, this demonstrates yet another significant difference between the statute at issue in *Cruz*—which provided for additional relief on top of damages designed to make the claimant whole—and the statute here—which provides for return of all payments made under the invalid contract.

5

inherently punitive.  Although violation of these provisions constitutes a "false, misleading, or deceptive act or practice" under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), *see* TEX. PROP. CODE §§ 5.069(d)(1), 5.070(b)(1), 5.072(e)(1), some claimants entitled to recover under the Property Code will not also recover under the DTPA, as this case demonstrates. Claimants who, like the Nguyens, recover only under sections 5.069, 5.070, or 5.072 do not receive the benefit of the DTPA's provisions for recovery of actual damages, much less the DTPA's more punitive provisions.[3] *See id.* §§ 5.069, 5.070, 5.072.  Unlike the liquidated damages provided under section 5.077, *see id.* § 5.077(c), (d) (providing liquidated damages of up to $250 per day, capped by total property value), it is not "obvious[]" that recovery of the amounts paid under a contract for deed obtained in violation of sections 5.069, 5.070, and 5.072 "bears no relation to the harm caused" by the wrongful contract. *See Flores*, 185 S.W.3d at 433 (construing TEX. PROP. CODE § 5.077).

Regardless of whether or how "punitive" the statute may be, I see no need to consider legislative history or to argue about the statute's unstated "purpose" when its stated effect is clear. If the Legislature's words are the "surest guide" to the Legislature's intent, *see Traxler*, 376 S.W.3d at 747, I can only conclude here that the Legislature *specifically intended* that purchasers receive "a *full* refund of *all* payments made to the seller."

**B.      "Rescind" Trumps All?**

Second, the Court reasons that, by using the word "rescind," the Legislature "intended Subchapter D's cancellation-and-rescission remedy to also contemplate the common law element

---

[3] Because the Nguyens did not recover under the DTPA, they could not seek an order under section 17.50(b)(3)—the provision at issue in *Cruz*.  *See Cruz*, 364 S.W.3d at 823.

of mutual restitution." *Ante* at ___. I agree that, generally, we could presume that the Legislature knows and intends the common meaning of a word like "rescind," but in construing this statute we "must give effect to *every* word, clause, and sentence" that the Legislature has used. *In re Office of Attorney Gen.*, — S.W.3d at —, 2013 WL 854755, at \*4 (emphasis added). Here, the Legislature stated that a purchaser is entitled "to cancel and rescind the executory contract *and receive a full refund of all payments made to the seller.*" TEX. PROP. CODE §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2) (emphasis added).

If the Legislature had intended that the purchaser be entitled only to "the common law element of mutual restitution," *ante* at ___, then the Legislature should (and, I must conclude, would) have ended these statutory provisions after the reference to the "executory contract," omitting the phrase "and receive a full refund of all payments made to the seller" completely. The Legislature did not omit that phrase, but the Court has done so for it. Because "every word or phrase in a statute is presumed to have been intentionally used with a meaning and a purpose," *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (quoting *State v. K.E.W.*, 315 S.W.3d 16, 21 (Tex. 2010)), we may not read that language out of this statute. *See also Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963) ("[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible."). In my view, the Legislature's use of the word "rescind" does not give us license to ignore the rest of what the Legislature said.

C.      *Cruz* **Controls?**

Third, the Court relies—incorrectly, I believe—on *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 826 (Tex. 2012). In *Cruz*, we interpreted a provision of the DTPA in which the Legislature provided that a court may "*restore to any party* to the suit money or property, real or personal, which may have been acquired *in violation of this subchapter*." TEX. BUS. & COM. CODE § 17.50(b) (emphases added). Reasoning that (1) the words "restore" and "restitution" share "the same root," (2) "[r]escission is merely the 'common, shorthand name' for the composite remedy of rescission and restitution," and (3) "rescission is not a one-way street" but instead "requires a mutual restoration and accounting," the Court concluded in *Cruz* that the Legislature intended that an order "restoring" property to a DTPA consumer must also deduct from that award the value of any benefits the consumer received. 364 S.W.3d at 825–26.

I do not agree that *Cruz* controls our decision in this case. The statute in *Cruz* authorized "restoration," and not just to the consumer, but "to any party to the suit." TEX. BUS. & COM. CODE § 17.50(b)(3). By contrast, the statutes here dictate that the "purchaser . . . receive a full refund of all payments made to the seller." TEX. PROP. CODE §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2). And, more importantly, the statute in *Cruz* authorized restoration only of amounts "acquired in violation" of the statute. TEX. BUS. & COM. CODE § 17.50(b)(3). By contrast, the statute here requires a "full refund of all payments made to the seller." TEX. PROP. CODE §§ 5.069(d)(2), 5.070(b)(2), 5.072(e)(2).

In short, the Court's construction of the DTPA provision in *Cruz* may have been consistent with the language of that statute, but that same construction is not consistent with the entirely

8

dissimilar language of the statute at issue here. Because the Legislature's language matters, our construction of very different statutory language in *Cruz* is of no help here.

**D.     "Rescind" doesn't mean "rescission"?**

Finally, the Court confirms its unwillingness to allow the language of the statute to control the outcome of this case when it concludes that "notice and restitution or a tender of restitution," which are prerequisites to the common law remedy of rescission, "are not prerequisites to the cancellation-and-rescission remedy under Subchapter D, as long as the affirmative relief to the buyer can be reduced by (or made subject to) the buyer's reciprocal obligation of restitution." *Ante* at ___. In other words, having decided that the Legislature's use of the word "rescind" justifies ignoring the statute's refund-of-all-payments provision, the Court then concludes that, actually, the Legislature doesn't really mean "rescind" or "rescission" at all.  Instead, it means "restitution," or what the Court calls "the common law element of mutual restitution."  *Id.* at ___.  Surely, if that's what the Legislature meant, it could have said so.  In my view, the Court has at this point gone from interpreting a law to making a law, because it believes restitution is a proper remedy, but rescission (with its inconvenient notice and tender prerequisites) is not. In doing so, the Court has demonstrated why its conclusion is wrong to begin with.

**II.**
**Conclusion**

Our principles of statutory construction require the Court to focus on the Legislature's words to determine the Legislature's intent.  We do this not because we agree with the Legislature's policy choices—sometimes, we vigorously disagree—but because "[w]e must take the Legislature at its word, respect its policy choices, and resist revising a statute under the guise of interpreting it." *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013).  Even if we were

10

convinced that the Legislature could not have intended to allow purchasers to receive "a full refund of all payments" made to the seller, the Court "must adopt the interpretation of the statute that is most faithful to its text. . . . 'If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent.'" *In re Allen*, 366 S.W.3d at 708 (quoting *Harbison v. Bell*, 556 U.S.180, 199 (2009) (Thomas, J., concurring) (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004)).

I agree with the Court's decision to reverse the Nguyens' award of attorney's fees and mental anguish damages, but I disagree that Morton is entitled to mutual restitution upon the rescission of the contract for deed. Because the Legislature has said that the Nguyen's are entitled to "a full refund of all payments made to the seller," I respectfully concur in part and dissent in part.

.

 

                                            _____

                                            Jeffrey S. Boyd
                                            Justice

**OPINION DELIVERED:** August 23, 2013