# IN THE SUPREME COURT OF TEXAS

══════════
No. 11-0261
══════════

SUSAN COMBS, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS,
AND GREG ABBOTT, ATTORNEY GENERAL OF THE STATE OF TEXAS,
PETITIONERS,

v.

ROARK AMUSEMENT & VENDING, L.P., RESPONDENT

═════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═════════════════════════════════════════════

**Argued October 15, 2012**

JUSTICE WILLETT delivered the opinion of the Court.

Roark Amusement & Vending, L.P. brought this tax-refund suit against the Comptroller of Public Accounts, seeking to recoup sales taxes it paid on "plush toy" prizes used to stock its coin-operated amusement machines. The court of appeals held the toys were exempt from sales tax under the Tax Code's sale-for-resale exemption. We agree and affirm the court of appeals' judgment.

## I. Factual and Procedural Background

The facts are undisputed, having been established below in a stipulation of facts or in uncontested affidavits. Roark owns and leases coin-operated amusement crane machines that are found in supermarkets, restaurants, and shopping malls throughout Texas. Customers aim to win

plush toys by using a joystick to maneuver a mechanical claw to grab the toys and drop them into a prize chute. Successful customers keep the prizes, and eventually all the toys become property of customers in this manner (except for those lost, stolen, or damaged).

Roark sought a refund of the sales taxes it paid on the toys it purchased to stock its machines for the period October 1, 2000 through February 29, 2004.[1] It argued that the toys were exempt under the sale-for-resale exemption discussed below. The Comptroller disputed that the exemption applied.

The trial court granted the Comptroller's motion for summary judgment and denied Roark's refund request. The court of appeals reversed, concluding the toys were exempt, and remanded the case to the trial court for a determination of the refund amount due Roark.[2] We granted the Comptroller's petition for review.

## II. Discussion

Our decision turns on the interplay of various Tax Code provisions found in chapter 151.

- The Sales Tax Generally: Section 151.051(a) imposes a sales tax "on each sale of a taxable item in this state." "'Taxable item' means tangible personal property and taxable services."[3] The plush toys are "tangible personal property," a term that captures "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any

---

[1] The parties stipulated that Roark pays an occupation tax on the machines themselves under chapter 2153 of the Occupations Code. *See* TEX. OCC. CODE § 2153.401. The Tax Code has since been amended in a manner that is not relevant to the time period in issue in this case, but may be relevant to the legal issues raised. *See* Act of June 28, 2011, 82d Leg., 1st C.S., ch. 4, § 12.01, 2011 Tex. Gen. Laws 5263 (adding new subsection (c) to TEX. TAX CODE § 151.006).

[2] ___ S.W.3d ___, ___.

[3] TEX. TAX CODE § 151.010.

other manner."[4]  A "taxable service" refers to certain services enumerated in section 151.0101, including "amusement services," which covers "the provision of amusement, entertainment, or recreation."[5]

- The Sale-For-Resale Exemption: Provisions found in subchapter H set out numerous exemptions.  Section 151.302(a) states: "The sale for resale of a taxable item is exempted from the taxes imposed by this chapter."  This provision is qualified by section 151.302(b), which states: "Tangible personal property used to perform a taxable service is not considered resold unless the care, custody, and control of the tangible personal property is transferred to the purchaser of the service."  A "sale for resale" is further refined in section 151.006.  Section 151.006(a)(3) provides that a sale for resale includes a sale of "tangible personal property to a purchaser who acquires the property for the purpose of transferring it . . . as an integral part of a taxable service."

- Coin-Operated Machines Specifically: Section 151.335 creates an exemption for coin-operated machines.  Section 151.335(a) states: "Amusement and personal services provided through coin-operated machines that are operated by the consumer are exempt from the taxes imposed by this chapter."  However, section 151.335(b) states: "This section does not apply to the sale of tangible personal property . . . through the use of a coin-operated machine."

When construing a statute, our chief objective is effectuating the Legislature's intent, and ordinarily, the truest manifestation of what lawmakers intended is what they enacted.[6]  This voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, "the judge's inquiry is at an end."[7]  We give such statutes their plain meaning without resort to rules of construction or extrinsic aids.[8]  On the other hand, "[i]f a statute is vague or

---

[4] *Id.* § 151.009.

[5] *Id.* § 151.0028.

[6] *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008).

[7] *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006).

[8] *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010) (branding such reliance "improper," because "[w]hen a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language" (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008))).

ambiguous, we defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute."[9]

We agree with Roark that under a plain-meaning review of the relevant statutes, it qualifies for a sales-tax exemption on the plush toys that fill its crane machines. The machines provide a taxable amusement service under sections 151.0028 and 151.0101, in that they provide for "amusement, entertainment, or recreation" under section 151.0028. The toys are subject to the sale-for-resale exemption because under section 151.006(3), the toys are "tangible personal property" acquired by Roark "for the purpose of transferring" the toys "as an integral part of a taxable service." Indeed, the toys are more than integral to the machines' amusement service—they are *indispensable*. There would be no point (or profit) to the game—and thus no game—if customers had no chance of winning a toy. Roark contends in its principal brief, and the Comptroller does not dispute, that "[c]ustomers would not pay to play an empty machine (i.e., they would not pay to move a crane's claw around an empty glass case), nor would they pay to play if the machines contained toys that were impossible to retrieve."

The Comptroller makes two arguments that are incompatible with the statutory text, and thus unpersuasive.[10]

### A. Do Roark's Crane Machines Provide a "Taxable Service"?

---

[9] *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, ___ S.W.3d ___, ___ (Tex. 2012).

[10] *See First Am. Title Ins. Co.*, 258 S.W.3d at 632 (deferring to Comptroller's interpretation "so long as the construction is reasonable and does not contradict the plain language of the statute" (quoting *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993))).

The Comptroller argues that the sale-for-resale exemption fails because the amusement service provided by Roark is not a "taxable service" under section 151.006(3). That is, since section 151.335(a) exempts amusement services provided by coin-operated machines, the service here is not taxable. We disagree with this construction, and instead find persuasive the court of appeals' analysis of this issue.

Taxable service is a defined term under chapter 151. If a term is expressly defined by statute we must follow that definition.[11] Section 151.0101 defines "taxable service" to include "amusement services," whether provided by coin-operated machines or otherwise. The fact that section 151.335(a) sets out an *exemption* for amusement services provided by coin-operated machines does not alter the fact that the machines provide a taxable service as defined in section 151.0101. Indeed, there would be no need to provide an exemption for this particular service if it were not a taxable service in the first instance. As noted above, under section 151.010, "taxable item" refers to "tangible personal property and taxable services." Section 151.301, the first provision of subchapter H, which sets out exemptions, provides: "If a *taxable item* is *exempted* from the taxes imposed by this chapter, the sale, storage, use, or other consumption of the item is not subject to the sales tax imposed by Section 151.051 of this code . . ." (emphasis added). This section confirms that under chapter 151 an item exempt from taxation may nevertheless be included in the universe of taxable

---

[11] *See* TEX. GOV'T CODE § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

items.[12] Taxable items in turn include taxable services, and taxable services include amusement services, under the provisions discussed above. Similarly, section 151.005 defines a "sale" or "purchase" to include "the performance of a taxable service . . . or, in the case of an *amusement service* . . . the use of a coin-operated machine" (emphasis added). Again, even though amusement services provided via coin-operated machines are later exempted in section 151.335(a), the definitional language of chapter 151 itself confirms that the performance of an amusement service through a coin-operated machine—the precise situation presented here—is a taxable service. Examining chapter 151 as a cohesive, integrated whole confirms that Roark's construction is the correct one.[13]

### B. Is the Chance to Win an "Integral Part of a Taxable Service"?

Alternatively, in looking to language in section 151.006(a)(3), requiring that the transfer of toys be an "integral part" of the service provided, the Comptroller argues that the sale-for-resale exemption in section 151.006(3) does not apply unless a toy is conveyed each and every time a customer plays the game. The Comptroller urges that section 151.302(b) imposes such a

---

[12] *See also 7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 690 (Tex. App.—Austin 2010, pet. denied) ("The sale-for-resale statute simply requires that the service to which the transfer of tangible personal property is integral be a *taxable* service—not that it actually *be taxed* in the particular instance in question.").

[13] *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) ("We determine legislative intent from the entire act and not just its isolated portions. Thus, we read the statute as a whole and interpret it to give effect to every part.") (citations and internal quotation marks omitted); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("Additionally, we must always consider the statute as a whole rather than its isolated provisions. We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.") (citation omitted). The Comptroller likewise urges the Court to view the Code as a whole, arguing for example in her principal brief that sections 151.006 and 151.302, discussed above, "are necessarily read in tandem," and advocating what she sees as "a reasonable and harmonious implementation of tax code sections 151.006, 151.302, and 151.335."

requirement by stating that tangible personal property is not considered resold unless the care, custody, and control of the property is "transferred to *the* purchaser of the service." We disagree. These provisions do not impose, either explicitly or implicitly, any such extra-statutory requirement, and we decline to engraft one—revising the statute under the guise of interpreting it.

We believe that in the area of tax law, like other areas of economic regulation, a plain-meaning determination should not disregard the economic realities underlying the transactions in issue.[14] Here, the summary-judgment evidence shows that all the toys placed in Roark's machines eventually become customers' property, except for those lost, stolen, or damaged. Further, the economic reality of the game is such that customers simply would not part with their money but for the *possibility* of winning a toy. In this practical sense, under section 151.006(a)(3), the transfer of toys is "an integral part" of the amusement service offered by Roark's machines. The Comptroller acknowledged at oral argument that no one would play the game without the possibility of winning a toy. Nothing in section 151.302(b) suggests that every single customer must walk away with a toy. That provision requires that "care, custody, and control of the tangible personal property" be

---

[14] The United States Supreme Court has long observed that statutory determinations in tax disputes should reflect the economic realities of the transactions in issue. *See, e.g., Boulware v. United States*, 552 U.S. 421, 429 (2008) ("The colorful behavior described in the allegations requires a reminder that tax classifications like 'dividend' and 'return of capital' turn on 'the objective economic realities of a transaction rather than . . . the particular form the parties employed.'") (citation omitted); *Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978) ("In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. The Court has never regarded 'the simple expedient of drawing up papers' . . . as controlling for tax purposes when the objective economic realities are to the contrary.") (citation omitted); *Comm'r v. Sw. Exploration Co.*, 350 U.S. 308, 315 (1956) (noting that "the tax law deals in economic realities, not legal abstractions"). We have similarly recognized, in deciding whether a tax is due, that we should consider the "essence of the transaction" or "the true object of [the] transaction" in issue. *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 167–68 (Tex. 1977).

"transferred to the purchaser of the service." This transfer in fact occurs and is integral to the success of the game as an amusement service.

The Comptroller's argument that reference to "the purchaser" rather than *a* purchaser requires that the customer must always, inexorably win a toy simply puts too much weight on the commonest article of speech. The wording of the statute and the economic realities of the transaction do not require this "everyone's a winner" result. Indeed the game would lose all intrigue, and thus all profitability, if customers won each and every time. No profit-seeking businessperson would rationally offer such a sure thing. The game would cease to be a game, and thus cease to amuse, and thus cease altogether.

The Comptroller contends that her position is set out in Comptroller Rule 3.301(b)(2),[15] which provides: "The operators of games, or other concessions, in which each participant does not receive some merchandise or prize, become the consumers of merchandise so used by them and are liable to the State of Texas for tax based on the sales price or use of the taxable items purchased for use by them." As explained in her principal brief, the Comptroller's position is that, under Rule 3.301(b)(2), "when each participant does not receive a prize, the game operator—or concessionaire—is not a retailer, but a consumer of the items it purchases to provide its service; such game operators are therefore not eligible to claim the resale exemption on purchases of toy prizes." Roark disputes that this Rule applies to its machines, describing it as outdated or alternatively invalid, and arguing that other rules apply instead, specifically Rules 3.301(c)(1) ("For an

---

[15] 34 TEX. ADMIN. CODE § 3.301(b)(2).

8

explanation of the taxability of an item purchased for use as a prize when the winning of the prizes depends upon chance or skill, see § 3.298(f)(1) of this title (relating to Amusement Services)."), 3.298(f)(1) ("Sellers of service may issue a resale certificate in lieu of tax to suppliers of tangible personal property only if care, custody, and control of the property is transferred to the client."), and 3.298(f)(2) ("A service will be considered an integral part of a taxable service if the service purchased is essential to the performance of the taxable service, and without which the taxable service could not be rendered.").[16] The Comptroller disputes the applicability of these Rules to this case. Regardless of which Comptroller Rule applies, the Comptroller cannot through rulemaking impose taxes that are not due under the Tax Code; the question of statutory construction presented in this case ultimately is one left to the courts.

### III. Conclusion

We affirm the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** March 8, 2013

---

[16] *Id.* §§ 3.301(c)(1), 3.298(f)(1)–(2).

9