

# KEN PAXTON
## ATTORNEY GENERAL OF TEXAS

October 3, 2016

Mr. David Mattax  
Commissioner of Insurance  
Texas Department of Insurance  
Post Office Box 149104  
Austin, Texas 78714-9104

Opinion No. KP-0115

Re: Under what circumstances Texas courts afford deference to agency interpretations of statutes (RQ-0110-KP)

Dear Commissioner Mattax:

You ask "under what circumstances Texas courts afford deference to agency interpretations of statutes, such that notice-and-comment rulemaking would be entitled to greater weight than an agency bulletin."[1] As background, you explain that the Department of Insurance ("Department") "uses bulletins to efficiently give public notice of a variety of topics." Request Letter at 1. You provide as an example Commissioner Bulletin #B-0012-16, which "notified the public of the requirements of House Bill 574 from the 84th Legislature."[2] *Id.* You observe that such notices "arguably could also go through notice-and-comment rulemaking under the Texas Administrative Procedure Act," and you question under what circumstances such rulemaking would be given greater deference by the courts than an agency bulletin. *Id.* Because Texas agency deference is commonly understood from its roots in federal jurisprudence, we must first briefly overview federal agency deference before turning to its Texas counterpart.

## I. Federal Agency Deference

Common understandings of agency deference tend to derive from federal caselaw. The foundation of the federal agency deference, known as *Chevron* deference, is that a federal court must "give effect to the unambiguously expressed intent of Congress"[3] but that when a statute contains an ambiguity or is silent on an issue, the court must defer to an agency's interpretation as

---

[1]Letter from Mr. David Mattax, Comm'r of Ins., Tex. Dep't of Ins., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (June 10, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs ("Request Letter").

[2]Although you refer to Commissioner Bulletin #B-0012-16 as an example of the Department's use of agency bulletins, you do not ask any questions directly related to the content of that bulletin, and this opinion should not be construed to address the specific pronouncements in the bulletin.

[3]*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

long as that interpretation is "reasonable."[4] These are commonly known as *Chevron* Step 1 (whether the statute is ambiguous) and *Chevron* Step 2 (whether the agency interpretation is reasonable). Over time, the U.S. Supreme Court has added elements to its test for when to apply agency deference, which can now be summarized as follows:

Step 0a:    Is the question one of deep economic and political significance, such that Congress would not have deferred the matter to an agency?[5]

Step 0b:    Has the agency used formal procedures?[6] If so, federal courts skip to Step 1. If not, federal courts weigh other factors in deciding whether to nonetheless apply *Chevron* deference.[7] And if *Chevron* deference is not warranted, federal courts may nonetheless use *Skidmore* deference.[8]

Step 0c:    If interpretation is informal, use balancing test to determine whether to treat interpretation as formal.[9]

Step 1:     Courts give effect to unambiguous Congressional intent.[10]

Step 2:     If the statute is silent or ambiguous, courts defer to the agency's reasonable interpretation.[11]

One example of the expansiveness of federal *Chevron* deference is *City of Arlington v. FCC*, where the Court held that judges should defer not just to agency interpretations of their own

---

[4]*Id.* at 865.

[5]*King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). Instead of deferring to the relevant agency, the Court waded through the test and context of the Affordable Care Act on its own. *Id.* at 2492–95. Notably, the Court arrived at the same conclusion the federal agency argued, but not because the agency was entitled to deference. *Id.* at 2495–96.

[6]*See United States v. Mead Corp.*, 533 U.S. 218, 230 (2001) ("Thus, the overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication.").

[7]*Id.* at 230–31 ("That said, and as significant as notice-and-comment is in pointing to *Chevron* authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded.").

[8]*Id.* at 228 ("The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))).

[9]Informal interpretations are given much less deference, known as *Skidmore* deference. *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

[10]*Chevron*, 467 U.S. at 842–43.

[11]*Id.* at 843.

statutes but also to agency interpretations of what statutes are theirs.[12]  Despite this expansive doctrine, there are signs the Court is trending toward reigning in *Chevron* deference.[13]  Overall, the touchstone of the federal inquiry is whether an agency interpretation is reasonable.

## II.    Texas Agency Deference

The Texas Supreme Court has established elements that vary to a degree from federal *Chevron* deference.  The Texas Supreme Court entertained a number of different deference arguments over the course of a half century before issuing a ruling in *Railroad Commission of Texas v. Texas Citizens for a Safe Future & Clean Water* that consolidated Texas agency deference law.[14]  *Texas Citizens* clarified that Texas courts engage in an analysis "similar" to the federal *Chevron* analysis, which can be broken down into four steps, and two sub-steps:[15]

| | |
|---|---|
| Step 0a: | Is the agency interpretation formal and entitled to deference or informal and not entitled to deference? |
| Step 0b: | How long-standing is the agency interpretation?  The more duration, the more deference. |
| Step 1: | Does the agency have authority to enforce the statute (*i.e.*, is the statute within the agency's area of expertise)? |
| Step 2: | Does the agency interpretation conflict with the plain language of statute? |
| Step 3: | Is the agency interpretation reasonable? |
| Step 4: | Courts will generally uphold agency interpretation. |

Each step warrants a closer look.

---

[12]133 S. Ct. 1863, 1867–70 (2013).

[13]*See, e.g., Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016).  There, a unanimous Court rejected an argument that received agency deference at the court of appeals:

> We reject the interpretation . . . adopted by the Ninth Circuit.  The court's reading of the phrase . . . may be plausible in the abstract, but it is ultimately inconsistent with both the text and context of the statute as a whole.  Statutory language "cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*Id.* (quoting *Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1357 (2012)).

[14]*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619 (Tex. 2011).

[15]*Id.* at 625.

## A. Formal v. Informal

At the outset, we address the deference Texas courts give to a formal rule in comparison with a publication like an agency bulletin.[16] The Texas Supreme Court has explained that to the extent courts defer to an agency's interpretation of a statute, such deference "applies to formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions" included in a court filing. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006). The Court has indicated that formal rules adopted by an agency after notice and an opportunity for public comment fulfill this qualifier. *See Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 855 (Tex. 2012) (deferring to a formally-promulgated Department rule). Likewise, courts will uphold final orders "formally adopted after an adjudication" if the issuing agency's interpretation satisfies the other requirements for deference. *Tex. Citizens*, 336 S.W.3d at 625. No Texas state court has addressed the extent to which it would defer to an agency bulletin like those promulgated by the Department. However, as we understand it, the Department's issuance of agency bulletins lacks the formal adoption process that exists for promulgating rules. Unlike federal agency deference, there is no recent Texas Supreme Court case granting agency deference to an informal interpretation.[17] Thus, a Texas state court would give significantly less deference to an agency bulletin than to a formal rule on the same issue, and given the Texas Supreme Court's comments in *Fiess* and *Texas Citizens*, it is possible that a Texas court may not give any deference to an informal agency bulletin.

## B. Duration

Additionally, a longer-duration interpretation can help an agency interpretation receive deference. In *Texas Citizens*, the Court noted, "we agree with the Commission that an agency's long-standing construction of a statute, especially in light of subsequent legislative amendments, is particularly worthy of our deference."[18] This notion is similar to the Court's doctrine that it will defer to an appellate court's construction of a statute that the Legislature has not overturned.[19]

---

[16]Your request concerns "Texas courts," so we will address Texas state courts. While Texas state courts engage in an analysis similar to federal courts when considering to what extent to defer to an agency's construction of a statute, Texas state courts "have never expressly adopted the [federal] *Chevron* or *Skidmore* doctrines" for doing so. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011). Distinctions between the state and federal doctrines exist, and we limit this opinion to a discussion of when Texas state courts afford deference to an agency's construction of a statute.

[17]*See Mead Corp.*, 533 U.S. at 230–32 (discussing possibility of granting federal agency deference to informal interpretations). Typically, however, federal courts are more likely to grant lesser *Skidmore* deference to such interpretations. *Id.* at 228.

[18]*Texas Citizens*, 336 S.W.3d at 632.

[19]*See Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) ("It is a firmly established statutory construction rule that once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."). It is worth noting, however, the Court has held that "neither legislative ratification nor judicial deference to an administrative interpretation can work a contradiction of plain statutory language." *Pretzer v. Motor Vehicle Bd.*, 138

Thus, while a long-standing interpretation does not appear to be absolutely required, it is certainly an important factor for determining how much deference an agency interpretation will receive.

### C. Area of Expertise

In *Texas Citizens*, the Court observed that it "should afford no deference to an agency's interpretation of a statute that does not lie within its administrative expertise or pertain to a nontechnical issue of law."[20]   There, the question was whether the Railroad Commission was entitled to agency deference under a statute that required it to consider "the public interest" when issuing a certain permit.  The Court held that

> the Commission interpreted the public interest finding in such a way as to ensure that it will only consider matters within its expertise. . . . [T]he Commission's determination that "public interest" does not include traffic-safety matters is reasonable under the Act's statutory scheme.  We further conclude it is reasonable given the Commission's unique competence as the state's agency overseeing oil and gas production.[21]

As such, the Court recognized that an agency's expertise is a mandatory prerequisite for deferring to its interpretation of a statute.

### D. Ambiguity

"[D]eferring to an agency's construction is appropriate only when the statutory language is ambiguous." *Hallmark Mktg. Co. v. Hegar*, 488 S.W.3d 795, 799 (Tex. 2016) (explaining that "statutory ambiguity is the quickest path to administrative deference").  Though the heart of the federal deference inquiry is reasonableness, the heart of the Texas inquiry is ambiguity.  Two years after the Court consolidated its agency deference jurisprudence, it made it abundantly clear that this core element is where agencies attempting to obtain deference will fail:

> It is true that courts grant deference to an agency's reasonable interpretation of a statute, but a precondition to agency deference is ambiguity; "an agency's opinion cannot change plain language."  There is no ambiguity about the ambiguity requirement, nor with the unassailable rule that agency interpretations cannot contradict statutory text.  Here, the Comptroller's interpretation is contrary to the Tax Code.[22]

---

S.W.3d 908, 915 (Tex. 2004).  In other words, the Legislature cannot be deemed to acquiesce to an incorrect judicial decision or administrative interpretation.

[20]*Texas Citizens*, 336 S.W.3d at 630.

[21]*Id.*

[22]*Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (quoting *Fiess*, 202 S.W.3d at 747).

Or as the Court framed it elsewhere: "[a]gency deference has no place when statutes are unambiguous—the law means what it says—meaning [courts] will not credit a contrary agency interpretation that departs from the clear meaning of the statutory language." *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013).

Importantly, Texas courts seldom conclude that a statute is ambiguous. This is largely due to the fact that the Texas Supreme Court has a well-developed, tiered process for assessing the meaning of statutes as a matter of law:[23] text, context, and canons of construction.[24] In construing statutes, Texas courts will first look to the plain language of the statute itself, recognizing that the text of the statute is the best indication of the Legislature's intent. *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013). If a statute's meaning is clear, courts will apply its words according to their common meaning without the use of rules of construction or extrinsic aids. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008). After all, "an agency's opinion cannot change plain language." *Fiess*, 202 S.W.3d at 747.

In addition to examining the text, courts are also to examine the context of the statute. The Texas Supreme Court has recently elaborated:

> When construing statutes, or anything else, one cannot divorce text from context. The meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them. Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases. The import of language, plain or not, must be drawn from the surrounding context, particularly when construing everyday words and phrases that are inordinately context-sensitive.[25]

To assess context, the Court "look[s] to a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure."[26]

Finally, if the court is unable to discern the meaning of a statute from the text and context of the statute, it will then "resort to canons of construction or other aids such as which statute is more specific." *Hallmark Mktg. Co.*, 488 S.W.3d at 800. Through the Code Construction Act, the Legislature has provided a number of statutory canons to assist in determining the meaning of a

---

[23]*Sw. Royalties, Inc. v. Hegar*, 2016 WL 3382151, at *4 (Tex. 2016) ("Whether statutory language is ambiguous is a matter of law for courts to decide, and language is ambiguous only if the words yield more than one reasonable interpretation.").

[24]Other members of the judiciary are focusing their judicial frameworks for construing statutes along the lines of the Texas model. *See* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 HARV. L. REV. 2118, 2144 (2016). Judge Kavanaugh asserts that the "best reading" of a statute's plain language "depends on (1) the words themselves, (2) the context of the whole statute, and (3) any other applicable semantic canons." *Id.* at 2144–45.

[25]*In re Office of the Attorney Gen. of Tex.*, 456 S.W.3d 153, 155–56 (Tex. 2015).

[26]*Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014).

potentially ambiguous statute. *See* TEX. GOV'T CODE §§ 311.001–.035; *see also id.* § 311.003 ("The rules provided in this chapter are not exclusive . . . ."). In addition to these legislative canons, Texas courts have developed and utilized numerous additional canons to aid in the construction of statutes. *See, e.g.*, *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) (explaining the canon of *noscitur a sociis*, or "it is known by its associates"); *Univ. of Tex. at Arlington v. Williams*, 459 S.W.3d 48, 52 (Tex. 2015) (explaining the canon of *ejusdem generis*, or the notion that "general terms and phrases should be limited to matters similar in type to those specifically enumerated"); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 53–336 (2012) (identifying fifty-seven canons of statutory construction used by courts to interpret statutes).

Rather than find a statute ambiguous and then defer to an agency construing it, Texas courts will often rely on these canons of statutory construction to determine for themselves the unambiguous meaning of a statute. *See, e.g.*, *Sw. Royalties, Inc.*, 2016 WL 3382151, at **4–5 (Tex. 2016) (using multiple canons of construction to determine that statutory language "is not ambiguous"). For example, the Texas Supreme Court has explained that "if an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, [courts] will apply the definition most consistent with the context of the statutory scheme." *Id.* at *4. It should come as no surprise that the Texas Supreme Court has only found statutes to be ambiguous in a handful of occasions since it clarified the requirements for agency deference in *Texas Citizens*. *See, e.g.*, *Tex. Citizens*, 336 S.W.3d at 628;[27] *Am. Nat'l Ins. Co.*, 410 S.W.3d at 853–54.[28]

### E. Reasonableness

In the rare case a Texas court finds a statute to be ambiguous, a Texas court then analyzes whether the agency's interpretation of the statute is reasonable. *Tex. Citizens*, 336 S.W.3d at 628. The agency's construction need not be "the only—or the best—interpretation in order to warrant [a court's] deference." *Id.* In other words, ambiguity and reasonableness are distinct but related requirements. Only if a statute is ambiguous may the court consider whether the agency interpretation is reasonable. But ambiguity also encompasses reasonableness. As the Texas Supreme Court has made clear after *Texas Citizens*, an ambiguous statute has more than one *reasonable* interpretation. *Id.*

### F. Serious Consideration

If the statute an agency is charged with administering has more than one reasonable interpretation, and the agency's formal, long-standing interpretation is reasonable, the deference

---

[27]The statute at issue in *Texas Citizens* allowed the Railroad Commission to approve a permit if it was "in the public interest," a phrase the Court acknowledged to be "amorphous." *Texas Citizens*, 336 S.W.3d at 626, 630.

[28]In *Texas Department of Insurance v. American National Insurance Co.*, a statute used but did not define the terms "stop-loss insurance" and "reinsurance." 410 S.W.3d 843, 854 (Tex. 2012). The various insurance statutes offered inconsistent interpretations of what those terms meant. *Id.* The Court deferred to the agency's reasonable interpretation that it promulgated through notice-and-comment rulemaking. *Id.* at 855.

is still not absolute. The Texas Supreme Court has framed the issue in two ways that at least provide a theoretical mechanism for a court to not defer: a court will "generally uphold" or give "serious consideration" to the agency interpretation.[29] Our research failed to yield a case where the agency ran the other elements of the gauntlet and still failed to receive deference. But the framing nonetheless indicates the Texas Supreme Court's resistance to deference. By comparison, this element of federal agency deference provides that federal courts will defer to the agency if the other elements of deference are met.[30]

### G. Constitutional Underpinnings of the Narrow, Texas Agency Deference

One might rightfully question why the Texas Supreme Court so rarely defers to agencies. Practically speaking, the Court has made clear that this is because of its view of statutes (or contracts) so rarely being ambiguous.[31] But there is also a more fundamental concern than notions of ambiguity undergirding a narrow view of agency deference: the constitution. We know from the structure of the federal and state constitutions that Congress and the Legislature write laws, the executive branches are to enforce them as written, and the judiciary interprets the laws.[32] The U.S. Supreme Court expounded on the role of the judiciary in the all-too-familiar case of *Marbury v. Madison*: "It is emphatically the province and duty of the judicial department to say what the law is. . . . If two laws conflict with each other, the courts must decide on the operation of each."[33] Constitutionally speaking, Texas courts will not lightly yield their constitutional role to interpret the law to the executive branch.[34] Agency deference results in one branch of government wielding

---

[29]*Health Care Servs. Corp.*, 401 S.W.3d at 629 (quoting *Texas Citizens*, 336 S.W.3d at 624–25).

[30]*See Chevron*, 467 U.S. at 844 ("Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

[31]*Health Care Servs. Corp.*, 401 S.W.3d at 630 ("[A] precondition to agency deference is ambiguity; 'an agency's opinion cannot change plain language.' There is no ambiguity about the ambiguity requirement, nor with the unassailable rule that agency interpretations cannot contradict statutory text." (quoting *Fiess*, 202 S.W.3d at 747) (footnote omitted)).

[32]U.S. CONST. arts. I–III; TEX. CONST. arts. II–V.

[33]5 U.S. 137, 177 (1803).

[34]This also helps explain why the Court does not give credence to such things as the statements of individual legislators. *See, e.g., Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) ("Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute. . . .Construing clear and unambiguous statutes according to the language actually enacted and published as law—instead of according to statements that did not pass through the law-making processes, were not enacted, and are not published as law—ensures that ordinary citizens are able to rely on the language of a statute to mean what it says. . . . It is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used . . . ."); *Klein v. Hernandez*, 315 S.W.3d 1, 11 (Tex. 2010) (Willett, J., concurring) ("The statute itself is what constitutes the law; it alone represents the Legislature's singular will, and it is perilous to equate an isolated remark or opinion with an authoritative, watertight index of the collective wishes of 181 individual legislators, who may have 181 different motives and reasons for voting the way they do." (quotation marks omitted)). And it also helps explain why the Court disregards legislators' attempts after the passage of a law to claim it means something other than what was written.

the power of two, or (if a legislative delegation is involved) all three.  Now, the drum beat of a chorus of commentators and even federal appellate judges are calling into question whether *Chevron* is constitutional. [35]  As James Madison framed the issue in Federalist No. 47, "[n]o political truth is . . . stamped with the authority of more enlightened patrons of liberty" than the separation of powers.  The Federalist No. 47 (James Madison).

---

*See, e.g.*, *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 444 (Tex. 2009) ("It has been our consistent view that '[e]xplanations produced, after the fact, by individual legislators are not statutory history, and can provide little guidance as to what the legislature collectively intended.'" (quoting *In re Doe*, 19 S.W.3d 346, 352 (Tex. 2000)).

[35]*See Gutierrez-Brizuela v. Lynch*, No. 14-9585, 2016 WL 4436309, at *7 (10th Cir. Aug. 23, 2016) (Gorsuch, J., concurring) ("Transferring the job of saying what the law is from the judiciary to the executive unsurprisingly invites the very sort of due process (fair notice) and equal protection concerns the framers knew would arise if the political branches intruded on judicial functions.").

## S U M M A R Y

Texas state courts consider deferring to an agency's interpretation of a statute only when the agency adopts the construction as a formal rule or opinion after formal proceedings. Even when the agency has formally adopted a construction, a state court will defer to that construction only upon finding that ambiguity exists in the statute at issue and that the agency's construction is reasonable and consistent with the statute's plain language.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee