# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00209-CV

**Dallas World Aquarium Corp., Appellant**

**v.**

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and
Ken Paxton, Attorney General of the State of Texas, Appellees**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-004255, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is a suit for refund of franchise taxes paid under protest. *See* Tex. Tax Code § 112.052 (authorizing such suits). After a bench trial, the trial court rendered a take-nothing judgment against the taxpayer, Dallas World Aquarium Corp. (DWA). We will affirm the judgment of the trial court.

## BACKGROUND

This dispute arises from the Comptroller's franchise-tax audit of DWA's tax report[1] for the reporting years 2009–2012 (calendar years 2008–2011). The State of Texas levies franchise taxes against a taxable entity's "taxable margin," a portion of its total margin. *See id.* § 171.002(a). The Tax Code allows a taxpayer to calculate its taxable margin as the lesser of:

---

[1] DWA filed combined tax reports with its affiliated entities, Daryl Richardson Restaurant Corporation and Daryl Richardson Gourmet Catering, Inc., but the Comptroller assessed additional franchise taxes against only DWA as the "reporting" entity, and thus this dispute is between the Comptroller and DWA only.

70% of its total revenue, its total revenue minus $1 million, its total revenue minus the cost of goods sold (COGS), or its total revenue minus certain compensation expenses.[2] *See id.* § 171.101(a)(1). After a taxpayer determines its taxable margin through one of the allowed methods, it apportions the margin to gross receipts from business done in this State and subtracts other allowable deductions. *See id.* § 171.101(a)(2), (3). The taxpayer then calculates its franchise tax owed by multiplying the taxable margin by the applicable tax rate. *Id.* § 171.002(a). DWA determined its taxable margin for the reporting years at issue using the COGS method.

Before trial, the parties filed agreed stipulations of fact, leaving as the sole issue before the trial court the determination of whether DWA may properly deduct certain expenses as COGS. *See id.* § 171.1012(a) (defining "goods" for purposes of COGS determination); *see also id.* § 171.1012(c) ("The cost of goods sold includes all direct costs of acquiring or producing the goods."). DWA operates the Dallas World Aquarium (the Aquarium). Per the stipulations:

- The Aquarium "is a rainforest and nature-based sensory immersion experience."

- "DWA's principal source of revenue [for the disputed period] was from admissions to" the Aquarium.

- "Guests paid for the experience by purchasing admission to or membership in" the Aquarium.

The stipulations also provided an agreed list of costs that DWA may include in its COGS deduction and agreed tax refunds for the relevant years "[i]f admission to the [] Aquarium is determined to be the sale of 'goods.'" The stipulations framed the dispositive issue thusly: "The

---

[2] For the tax-reporting years at issue, the Tax Code provided only three of the four currently available methods for computing taxable margin; the legislature added the method for deducting total revenue minus $1 million in 2013. *Compare* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, sec. 171.101, 2006 Tex. Gen. Laws 1, 8, *with* Tex. Tax Code § 171.101(a)(1).

parties dispute whether the sale of admissions to the Dallas World Aquarium is the sale of 'goods' such that DWA may include its cost of producing the sensory immersion experience in cost of goods sold."

At trial, two witnesses for DWA testified: its accountant and one of its biologists. Both witnesses testified at length about the "tangible" and "external" things in the Aquarium— the fish, the birds, the mammals, the plants, the trees, the humidity, the mist. They also testified about how the disputed expenses—including cost of flora, fertilizers, fauna, feed, zoological-staff salaries, maintenance costs and staff wages, water filters, aquarium pumps, and utilities[3]—together provide the "external experience" that DWA is "selling" to visitors through its admission and membership fees.

After rendering its take-nothing judgment, the trial court issued findings of fact and conclusions of law per DWA's request. The conclusions of law included the following: "DWA's sensory immersion experience was not a 'good' for purposes of the Texas franchise-tax cost-of-goods-sold deduction."

**STANDARD OF REVIEW**

The issue in this appeal involves statutory construction, which is a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). Our primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "We thus

---

[3] The stipulations provide that the following expenses are "undisputed COGS" and are, therefore, not at issue in this appeal: merchandise sold in the Aquarium's gift shop, food products sold in the Aquarium's restaurant, 16-page "field guides" given to guests upon admission, and free t-shirts given to guests "struck by feces from overhead birds."

construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)).

We similarly review a trial court's conclusions of law de novo to determine their correctness and will uphold a judgment if it can be sustained on any legal theory supported by the evidence. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Further, "we will not reverse an erroneous conclusion if the trial court rendered the proper judgment." *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012); *see BMC Software*, 83 S.W.3d at 794.

## DISCUSSION

In several issues, DWA contends that the trial court "erred in concluding that DWA does not sell tangible personal property" by virtue of its "sale of the nature-based sensory rainforest experience to customers." DWA specifically takes issue with nine of the trial court's conclusions of law. However, we need not address each of the challenged conclusions of law because we have determined that the trial court's judgment may be affirmed on the trial court's conclusion that "DWA's sensory immersion experience was not a 'good' for purposes of the Texas franchise-tax cost-of-goods-sold deduction." *See* Tex. R. App. P. 47.1, 47.4; *BMC Software*, 83 S.W.3d at 794 (noting that appellate court must uphold judgment on any legal theory that is supported by evidence even if trial court made erroneous legal conclusions).

The COGS deduction is available to taxpayers that sell "goods." *See* Tex. Tax Code §§ 171.101(a)(1)(B)(ii)(a)(1), .1012(a)(1). Section 171.1012 defines "goods" as "real or

4

tangible personal property sold in the ordinary course of business of a taxable entity." *Id.* § 171.1012(a)(1). DWA contends that the Aquarium "experience" it offers customers in exchange for their payment of admissions and membership fees constitutes the sale of "tangible personal property." To address this contention, we look to the dispositive definition in section 171.1012(a)(3):

    (A) "Tangible personal property" means:

        (i)     personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner;

        (ii)    films, sound recordings, videotapes, live and prerecorded television and radio programs, books, and other similar property embodying words, ideas, concepts, images, or sound, without regard to the means or methods of distribution or the medium in which the property is embodied, for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered; and

        (iii)   a computer program, as defined by Section 151.0031.

   (B) "Tangible personal property" does not include:

        (i)     intangible property; or

        (ii)    services.

*Id.* § 171.1012(a)(3). The parties agree that neither subsection (A)(ii) nor (A)(iii) applies to this dispute and that the determination of whether the disputed expenses qualify for the COGS deduction turns on whether the Aquarium "experience" meets the definition in subsection (A)(i).

      DWA asserts that the evidence conclusively established that "the sensory experience it sells to customers is perceptible to at least four of the five human senses." That is,

5

customers can "taste and feel the thick humidity and rain in the facility," "see and smell a wide variety of animals and plants in their native habitats," "hear the birds and monkeys howling as they roam free," and "feel the Toucans eating blueberries from their palms." It follows, according to DWA, that the sensory experience therefore qualifies as "personal property that can be seen, weighed, measured felt, or touched or that is perceptible to the senses in any other manner." *See id.* § 171.1012(a)(3)(A)(i). We disagree.

The first two words in section 171.1012(a)(3)(A)(i)'s definition of "tangible personal property" are "personal property," but Title 2 of the Tax Code (containing the franchise-tax statutes) does not define "property" or "personal property." We therefore give those terms their ordinary meanings unless different meanings are apparent from the context of the statute. *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016); *Texas Civil Commitment Office v. Hartshorn*, 550 S.W.3d 319, 324 (Tex. App.—Austin 2018, no pet.). Also, if an undefined term has multiple common meanings, we will apply the definition most consistent with the context of the statutory scheme. *Southwest Royalties*, 500 S.W.3d at 405.

The ordinary meaning of "property" is "something that is or may be owned or possessed." *Webster's Third New Int'l Dictionary* 1818 (2002). The ordinary legal meaning of "property" is similar: "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised," or a "bundle of rights" that includes "the right to possess and use, the right to exclude, and the right to transfer." *Property*, *Black's Law Dictionary* (10th ed. 2014). The ordinary meaning of "personal property" is any property other than real property. *See Webster's Third New Int'l Dictionary* 1687 (2002) (defining term as "estate or property other than real property consisting in general of things temporary or movable including intangible property" and "chattels"); *Personal Property*, *Black's Law Dictionary* (10th ed. 2014) (defining

6

term as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property")[4].

An "experience," on the other hand and as appropriate to this context, means "something personally encountered, undergone, or lived through" or "an event observed or participated in." *Webster's Third New Int'l Dictionary* 800 (2002). Based on this meaning, the "experience" an Aquarium customer receives owes its very existence to the customer as observer or participant—essentially, to the customer's sentience. In other words, it is not until a customer enters the Aquarium that the customer has an "experience" thereof, and that customer's experience does not exist independently of or externally to the customer and does not preexist his or her visit. Furthermore, a customer cannot transfer his or her experience to another person, no matter how many photos or words he or she shares with another. Experiences are, essentially: observations, memories, feelings, and thoughts in response to events. While perhaps ephemeral and intangible, one's experience of the Aquarium cannot be said to be an "external thing over which the rights of possession, use, and enjoyment [may be] exercised." *See Property*, *Black's Law Dictionary*; *see also Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 637 n.14 (Tex. 2013) (noting that in making statutory determinations in tax disputes, courts should consider "essence of the transaction" and its "true object").

The Aquarium "experience," therefore, is categorically at odds with the ordinary meaning of "property"—something external and capable of ownership and all of its usual incidents. While the Aquarium itself and all of its undeniably tangible accoutrements—the

---

[4] As a point of comparison, the Property Tax Code (Title 1 of the Tax Code) similarly defines the term "property" for the purpose of that title as "any matter or thing capable of private ownership" and the term "personal property" as "property that is not real property." *See* Tex. Tax Code § 1.04(1), (4).

monkeys, the trees, the mist—provide the setting and an "event," of sorts, for a customer to experience, the Aquarium and its contents are not for sale (apart from the field guides, t-shirts, and food and merchandise not at issue here), and the Aquarium is not selling (and, practically, could not sell) the customer's experience to him or herself. Rather, the Aquarium is "selling" customers only the permission or license to enter into the setting and thereby experience all that the setting has to offer, at the customer's will. Admission to the Aquarium and the time that a customer spends therein—however "immersive" and "sensory" that setting, time, and resultant experience may be—is simply not "property" in any reasonable and ordinary sense of the word.

While DWA *uses* tangible personal property to provide the setting for its customers to have an "immersive experience," neither admission to the Aquarium nor the immersive experience itself is tangible personal property as a matter of law. *Cf. American Multi-Cinema, Inc. v. Hegar*, No. 03-14-00397-CV, 2017 WL 74416, at *6–7 (Tex. App.—Austin Jan. 6, 2017, pet. filed) (mem. op.) (determining that movie theater's sales of admission to customers to view projected films qualified for COGS deduction because film showings met film-specific definition of "tangible personal property" in section 171.1012(a)(3)(A)(ii) not at issue here). We overrule DWA's appellate issues and hold that the trial court properly determined that DWA is not entitled to any relief on its tax-refund claim.

**CONCLUSION**

Because DWA is not entitled to the COGS deduction for the "sensory immersion experience" that its Aquarium offers to customers in exchange for admission fees, we affirm the judgment of the trial court.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:  June 19, 2019