# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00375-CV

**CEC Entertainment, Inc., Appellant**

**v.**

**Glenn Hegar, Comptroller of Public Accounts of The State of Texas; and Ken Paxton, Attorney General of The State of Texas, Appellees**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-004422, THE HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a sales-tax refund case. CEC Entertainment, Inc. sued Glen Hegar, Comptroller of Public Accounts of The State of Texas, and Ken Paxton, Attorney General of The State of Texas (collectively, the "State") seeking refund, under the Tax Code's sale-for-resale exemption, of sales taxes that it paid on purchases of coin-operated gaming equipment for its Texas Chuck E. Cheese restaurants. The district court rendered a take-nothing judgment against CEC. On appeal, CEC raises three issues relating to the Tax Code's sale-for-resale exemption, the principal and dispositive issue being CEC's argument that it "transfers" gaming equipment to its customers while those customers are playing the games on the equipment. We will affirm the judgment.

## BACKGROUND

The facts are undisputed, having been established below by stipulation. CEC owns and operates Chuck E. Cheese restaurants in Texas. These restaurants provide food, beverages, and entertainment. The entertainment includes coin-operated machines—video games, redemption games, skill games, kiddie rides, and big-attraction games—that, as the name suggests, restaurant patrons can play or ride by inserting a coin or token in the machines.

Between March 2007 and April 2013, CEC purchased and paid sales taxes on coin-operated game equipment and component parts for use in its Texas restaurants. CEC later filed claims with the Comptroller for refund of those sales, arguing that its purchases of coin-operated machines and component parts are exempt from the imposition of the sales tax under the Tax Code's "sale for resale" exemption discussed below. The Comptroller disputed that the exemption applied and denied CEC's refund claims. CEC then timely filed the underlying suit in Travis County district court, seeking a refund of $2,411,522.89, plus statutory interest on that amount. After a bench trial, the district court rendered a take-nothing judgment against CEC. CEC perfected this appeal, asserting in three issues that its purchase of the coin-operated gaming equipment is exempt from sales tax under the Tax Code's sale-for-resale exemption.

## DISCUSSION

Because the facts in this case are not in dispute, our decision turns on construction of various provisions of Chapter 151 of the Tax Code.[1] Section 151.051(a) imposes a sales tax

---

[1] When construing a statute, our chief objective is effectuating the Legislature's intent, and ordinarily, the truest manifestation of what lawmakers intended is what they enacted. *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (citing *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008)). This voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, "the judge's inquiry is at an end." *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*,

"on each sale of a taxable item in this state." Tex. Tax Code § 151.051(a).[2] "'Taxable item'

means tangible personal property and taxable services." *Id.* § 151.010. There is no dispute that

the coin-operated gaming equipment and component parts are "tangible personal property," a

term that captures "personal property that can be seen, weighed, measured, felt, or touched or

that is perceptible to the senses in any other manner." *Id.* § 151.009.

Provisions found in subchapter H set forth numerous exemptions to the sales tax

imposed by Chapter 151. Relevant here, section 151.302(a) states: "The sale for resale of a

taxable item is exempted from the taxes imposed by this chapter." *Id.* § 151.302(a). "Sale for

resale" includes, at issue here, the sale of tangible personal property to a purchaser who acquires

the property:

- "for the purpose of *reselling* it . . . in the normal course of business . . . as an . . . integral part of . . . a taxable service," *id.* 151.006(a)(1) (defining "sale for resale) (emphasis added); or

- "for the purpose of *transferring* it . . . as an integral part of a taxable service," *id.* § 151.006(a)(3) (emphasis added).

---

209 S.W.3d 644, 651–52 (Tex. 2006)). We give such statutes their plain meaning without resort to rules of construction or extrinsic aids. *Id.* (citing *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010) (branding such reliance "improper," because "[w]hen a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language" (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008))). On the other hand, "[i]f a statute is vague or ambiguous, we defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute." *Id.* (quoting *Texas Dep't of Ins. v. American Nat'l Ins. Co.*, 410 S.W.3d 843, 853 (Tex. 2012)).

[2] In 2007, 2011, 2015, and 2019, the Legislature amended several of the Chapter 151 provisions that are at issue in this case. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 1266, 2007 Tex. Gen. Laws 4239; Act of June 28, 2011, 82d Leg., 1st C.S., ch. 4, 2011 Tex. Gen. Laws 5254; Act of May 21, 2015, 84th Leg., R.S., ch. 426, 2015 Tex. Gen. Laws 1675; Act of May 21, 2019, 86th Leg., R.S., ch. 638, 2019 Tex. Gen. Laws ___. Unless otherwise indicated, we cite to the provisions of the Tax Code in effect during the tax period in question.

With regard to subsection 151.006(a)(1), the Tax Code does not define "resell," but it does define "sale or purchase" as "a transfer of title or possession of tangible personal property" "when done or performed for consideration." *Id.* § 151.005. "Transfer" is not defined in the Tax Code.

CEC argues that reading these provisions together—i.e., subsections 151.006(a)(1)'s and (3)'s descriptions of "sale for resale" and section 151.005's definition of "sale or purchase"—an item is exempt from the sales tax under the sale-for-resale exemption if the item is "transferred" to a downstream consumer as an integral part of a service. CEC argues in its first issue that it is entitled to the sale-for-resale exemption because it "transfers" the coin-operated machines to its customers as an integral part of its amusement service. We disagree.

In the context of the Tax Code's sale-for-resale exemption, we have determined "transfer" means "to make over or negotiate the possession or control of (a right, title, or property) by a legal process usually for a consideration: convey." *Fitness Int'l, LLC v. Hegar*, No. 03–15–00534–CV, 2016 WL 3391606, at *3 (Tex. App.—Austin June 16, 2016, pet. denied) (mem. op.) (relying on definition of "transfer" in *Webster's Third New Int'l Dictionary* 2426–27 (2002) to hold that health club's purchase of exercise equipment did not qualify for sale-for-resale exemption because health club did not resell or transfer the exercise equipment to its members customers each time those customers used the equipment); *see also American Heritage Dictionary of the English Language* 1844 (5th ed. 2011) (defining "transfer" as "To convey or cause to pass from one place, person, or thing to another"; "To make over the possession or legal title of"). Thus, under the plain language of the Tax Code, CEC is entitled to the exemption if it "makes over or negotiates the possession or control of [the coin-operated gaming equipment] by a legal process."

4

Based on the record before us, Chuck E. Cheese's patrons have neither "control" nor "possession" over the coin-operated gaming equipment. *See Webster's* at 496 (defining noun "control" as "power or authority to guide or manage; directing or restraining domination"), 1770 (defining "possession" as "actual physical control or occupancy of property by one who holds for himself and not as a servant of another without regard to his ownership and who has legal rights to assert interests in the property against all others having no better right than himself"); *see also Possess*, *Black's Law Dictionary* (10th ed. 2014) ("to have in one's actual control"). While CEC argues that the customers' use of the coin-operated machines to ride or play a game constitutes control, it is CEC that determines the predominant features of the machines and their use. For example, CEC, not its customers, controls the volume, length of play time, and skill level. The customers must use the games and their settings as they are presented by CEC; they are not allowed to change any of the equipment's settings, even when they have paid to play or ride. Likewise, it is CEC that determines where the equipment is placed, and in fact, CEC places asset tags on each machine to track its location. Customers are not allowed to move the equipment, even when they have paid to play or ride. And customers do not have access to the equipment outside of Chuck E. Cheese's operating hours. Further, while customers do have access to parts of the equipment while playing a game or riding, they never have access to the equipment's internal parts, including those areas where the coins, tickets, and software are located. Finally, CEC employees are responsible for maintaining, cleaning, and repairing the coin-operated machines and their component parts. The restaurant employees also supervise customers' use of the coin-operated machines and, if necessary, correct inappropriate behavior. In sum, what customers get when they insert a coin or token in CEC's coin-operated gaming machines is not

5

possession or control of the equipment, but limited access to enjoy the games or rides offered on the equipment.

CEC argues that our construction of "transfer" should be guided by "the economic realities of the business making the transfer." Specifically, CEC contends that the economic reality of its business is to engage in short-term transfers of control and possession of its coin-operated gaming equipment. Thus, CEC continues, its purchase of that equipment qualifies for the sale-for-resale exemption because we must construe the "transfer" requirement in the context of CEC's business model. But this argument misconstrues the economic-reality doctrine, which simply provides that "in the area of tax law, like other areas of economic regulation, a plain-meaning determination should not disregard the economic reality underlying the transactions in issue." *Combs v. Roark Amusement & Vending L.P.*, 422 S.W.3d 632, 637 (Tex. 2013). The reality underlying the transactions at issue here, whether economic or otherwise, is that CEC does not "transfer" its coin-operated gaming equipment to customers who pay to play or ride those machines; it simply allows them to access, on CEC's terms, the games or rides provided by that equipment.

As support for its economic-reality argument, CEC cites to a 1979 decision by the Comptroller in a case involving the rental of bowling shoes. *See* Comptroller Decision No. 10,807, 1979 WL 4303 (Dec. 12, 1979). In that decision, the taxpayer, who operated a bowling alley, argued that its customers' payment for the temporary use of bowling shoes does not constitute a true rental, and thus is not subject to the sales tax, because the customers do not exercise actual control over the shoes, but may only use them on the premises while bowling. *See id.* at *1–2. The Comptroller rejected that argument, noting:

6

In a rental situation there are always some limitation's [sic] or restrictions upon the use and control of the property, and this, of course, generally relates to the amount of consideration paid for such use and control. Persons rent personal property for certain time periods and/or for certain purposes and pay accordingly.

*Id.* CEC asserts that this decision supports its position here because the Comptroller acknowledges that tangible personal property can be transferred for a limited duration. But this Comptroller decision does not address the sale-for-resale exemption and, relatedly, does not "acknowledge" that bowling-shoe transactions are a "transfer" under the Tax Code. Rather, it construes since-amended provisions of the Tax Code to determine whether the bowling-shoe transaction constituted a rental of tangible personal property and, thus, was a taxable sale. *See* Act of May 6, 1971, 62d Leg., R.S., ch. 292, § 1, 1971 Tex. Gen. Laws 1193 (imposing sales tax on sale of taxable items) (current version codified at Tex. Tax Code § 151.051); Act of Sep. 6, 1969, 61st Leg., 2d C.S., ch. 1, § 7, 1969 Tex. Gen. Laws 61, 64 (defining "sale" as including "lease or rental . . . of tangible personal property") (current version codified at Tex. Tax Code § 151.005(2)). CEC does not contend that its transactions are rentals. Regardless, our holding here is based on the fact that CEC does not "transfer"—i.e., give possession or control of—the coin-operated gaming equipment to its customers because the customers only have access to use of the games or rides provided by the equipment under CEC's conditions and parameters.

CEC also cites to a 1994 Comptroller letter ruling regarding the applicability of the sale-for-resale exemption to bowling balls and other bowling-related equipment. *See* Comptroller Letter Ruling No. 9411681L (Nov. 3, 1994). In that decision, the Comptroller explained that bowling balls, shoes, and score sheets benefitted from the sale-for-resale exemption because their "care, custody and control . . . is transferred to the customer as part of

the service." *Id.* CEC also emphasizes the Comptroller's related determination that the exemption does not apply to bowling pins:

> Unlike bowling balls, the care, custody and control of bowling pins is not actually transferred to customers. While it could be argued that control is passed to the bowler because some control can be exercised over the pins and pin[-]setting equipment, . . . care and custody is not transferred to the customer.

*Id.* But again, CEC's customers are not given care, custody, and control of the coin-operated equipment for the reasons detailed above; rather, they are allowed to use, on CEC's terms, the game or ride offered by the equipment. As such, the transaction involving the coin-operated gaming machines is more like that involving the bowling pins: the customer arguably exercises some control over the coin-operated gaming equipment—i.e., the game or ride—but ultimately the equipment itself is not transferred to the customer.

For the foregoing reasons, we hold that CEC does not "transfer" the coin-operated machines to its customers and, as a result, is not entitled to the sale-for-resale exemption under the plain language of the relevant provisions of the Tax Code. Accordingly, we overrule CEC's first issue. Because CEC's remaining issues are dependent on a favorable resolution of its first issue, we do not address them.[3]

---

[3] CEC's second and third issues are as follows: (1) "If CEC did transfer its gaming equipment to customers, was CEC also required to include the transfer of 'care, custody, and control' of the gaming equipment as provided in Tax Code § 151.302(b)?"; and (3) "If the transfer of care, custody, and control is required, did the district court apply the correct legal standard for determining a transfer of care, custody, and control?"

**CONCLUSION**

We affirm the district court's judgment.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   December 5, 2019