# Supreme Court of Texas

---

No. 22-0437

---

Texas Health and Human Services Commission,

*Petitioner*,

v.

Estate of Clyde L. Burt, Linda S. Wallace, Executor, and
Linda S. Wallace,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Third District of Texas

---

**Argued October 4, 2023**

JUSTICE BLAND delivered the opinion of the Court, in which Justice Lehrmann, Justice Blacklock, Justice Busby, Justice Huddle, and Justice Young joined.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which Justice Boyd and Justice Devine joined.

To qualify for Medicaid assistance, an applicant's resources, like cash and assets, must fall below a threshold level. The calculation of resources for this purpose excludes the applicant's home. The issue presented in this case is whether an interest in property purchased with

cash after a Medicaid applicant enters a skilled-nursing facility qualifies as a "home" under federal law, excluding it from the calculation that determines Medicaid eligibility.

The Texas Health and Human Services Commission concluded that the property interest is not excluded, and thus it denied the claim for assistance. The trial court reversed the agency's determination, and the court of appeals affirmed. The court of appeals held that a property interest created after admission to a skilled-nursing facility can be excluded from the resources used to determine Medicaid eligibility if the applicant states an intent to live at the property in the future. In its view, this is so even though the purchase took place after the Medicaid claim arose, using funds that otherwise qualified as resources for calculating Medicaid eligibility.[1]

We hold that a "home" is the applicant's principal place of residence before the claim for Medicaid assistance arises, coupled with the intent to reside there in the future. A property interest purchased with qualifying resources after the applicant moves to a skilled-nursing facility is an available resource for determining Medicaid eligibility under federal eligibility rules, as the property was not the applicant's principal place of residence at the time the claim for benefits arose. We reverse and render judgment in favor of the Commission.

**I**

Clyde and Dorothy Burt purchased a house in Cleburne, Texas, and lived there many years. In 2010, however, they sold the house to

---

[1] 644 S.W.3d 888, 895 (Tex. App.—Austin 2022).

2

their daughter and son-in-law, Linda and Robby Wallace. The Burts moved to a rental property the Wallaces owned.

About seven years later, in August 2017, the Burts moved to a skilled-nursing facility. At the time, the Burts had cash assets and cash value in a life insurance policy; both count as available resources for Medicaid eligibility.[2] After moving into the facility, the Burts used these assets to buy an undivided one-half interest in the Cleburne house from the Wallaces.[3] The Burts then executed a Lady Bird deed in favor of the Wallaces.[4] By executing the deed, the Burts granted their newly acquired one-half interest back to the Wallaces, reserving an enhanced life estate. As a result, the Burts' undivided one-half interest in the Cleburne house reverted to the Wallaces upon the Burts' deaths. After these transactions, the Burts were left with qualifying resources of

---

[2] *See* 20 C.F.R. § 416.1201. The Burts also had railroad retirement income.

[3] The Burts represented in their Medicaid application that they transferred cash and their interest in a life insurance policy to their daughter to purchase their property interest in the Cleburne house for $54,379.18. The parties agree that the Burts' ownership interest had a market value of $82,048.50, but the Commission does not challenge the purchase as a transfer for less than fair market value. *See id.* § 416.1246(a), (e) (providing that "[t]ransfer of a resource for less than fair market value is presumed to have been made for the purpose of establishing . . . Medicaid eligibility" and may be included in an applicant's resources calculation).

[4] A "Lady Bird deed," also known as an "enhanced-life-estate deed," is "[a] deed that allows a property owner to transfer ownership of the property to another while retaining the right to hold and occupy the property and use it as if the transferor were still the sole owner." *Lady Bird deed*, Black's Law Dictionary (11th ed. 2019).

3

$2,016.10, which is under the $3,000 maximum resource threshold for couples to be eligible for Medicaid assistance.[5]

On the day of the sale, Clyde Burt executed a Form H1245, informing the Commission that he considered the Cleburne house to be his home and principal place of residence, to which he intended to return. Shortly thereafter, he submitted the form along with his and his wife's joint application for Medicaid nursing-facility assistance. While their application was pending, the Burts died, having never left the skilled-nursing facility. They incurred $23,479.35 in costs for their care.

The Commission denied the estate's claim for Medicaid assistance. It determined that the Burts' interest in the Cleburne house was not excludable as a resource for determining Medicaid eligibility. A Commission hearing officer and reviewing attorney upheld the decision. They reasoned that the property interest was not excludable as the Burts' home because the home had not been the Burts' residence in the years before they entered the nursing facility.[6]

Linda Wallace, as executor and beneficiary of her father's estate, petitioned for review in the district court, arguing that the Commission should have excluded the Burts' interest in the Cleburne house from the Burts' available resources.[7] Agreeing, the trial court reversed the Commission's decision.

---

[5] *See* 42 U.S.C. § 1382(a)(3)(A).

[6] *See* 1 Tex. Admin. Code § 358.348; Tex. Health & Hum. Servs. Comm'n, Medicaid for the Elderly and People with Disabilities Handbook F-3000, Home (2021).

[7] *See* Tex. Gov't Code § 531.019. Dorothy Burt is not named as a party. Neither party contends that this affects the disposition of this case.

4

The court of appeals affirmed, holding that an applicant's principal place of residence and home for Medicaid eligibility purposes turns on the applicant's subjective intent.[8] The court of appeals reasoned that "the purposes of Medicaid are better served by allowing an applicant to claim the home exemption for a home he buys while in a nursing facility," because renters and homeowners "will be in the same need of a home upon . . . discharge from the institution."[9]

The Commission petitioned this Court for review, arguing that the court of appeals' expansive interpretation of "home" fails to comport with "home" under state and federal law. We granted review.

## II

We review the Commission's denial of Medicaid assistance under the substantial evidence rule.[10] Under that standard, courts first "determine whether the agency's construction contradicts the statute's plain language."[11] Statutory interpretation is a question of law we consider de novo.[12] If the Commission's construction comports with the statute, then a reviewing court should uphold the Commission's decision "if the evidence is such that reasonable minds could have reached the

---

[8] 644 S.W.3d at 890, 893.

[9] *Id.* at 894 (citing *Est. of Seffer v. Tex. Health & Hum. Servs. Comm'n*, No. D-1-GN-08-000790 (419th Dist. Ct., Travis County, Tex. Dec. 16, 2008)).

[10] *See R.R. Comm'n of Tex. v. Cont'l Bus Sys., Inc.*, 616 S.W.2d 179, 181 (Tex. 1981); Tex. Gov't Code § 531.019(g).

[11] *Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 407 (Tex. 2022).

[12] *Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019).

conclusion that the agency must have reached in order to justify its action."[13]

## A

Medicaid is a federal and state assistance program that provides medical and skilled-nursing care for qualifying persons.[14] Federal law sets Medicaid's parameters, and the states enact legislation to implement the program.[15] In Texas, the Health and Human Services Commission administers Medicaid.[16]

Texas's methodology for determining income and resource eligibility must be "no more restrictive[] than the methodology . . . under the [federal] supplemental security income program."[17] Under that standard, an applicant's resources must not exceed $2,000 for an individual or $3,000 for a couple.[18] "Resources" includes "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance."[19] Under the statute, the Commission must

---

[13] *Tex. Health Facilities Comm'n v. Charter Med.–Dall., Inc.*, 665 S.W.2d 446, 453 (Tex. 1984) (citing *Suburban Util. Corp. v. Pub. Util. Comm'n*, 652 S.W.2d 358, 364 (Tex. 1983)).

[14] *El Paso Hosp. Dist. v. Tex. Health & Hum. Servs. Comm'n*, 247 S.W.3d 709, 711 (Tex. 2008); *see also* 42 U.S.C. §§ 1396–1396w-8.

[15] *See El Paso Hosp. Dist.*, 247 S.W.3d at 711; 42 U.S.C. § 1396a; 42 C.F.R. § 430.0.

[16] *El Paso Hosp. Dist.*, 247 S.W.3d at 712; Tex. Gov't Code § 531.021.

[17] 42 U.S.C. § 1396a(r)(2).

[18] *Id.* § 1382(a)(3).

[19] 20 C.F.R. § 416.1201(a).

6

exclude an applicant's "home (including the land that appertains thereto)" from the applicant's available resources.[20]

The Commission argues that the Burts' interest does not qualify as their "home" for Medicaid eligibility. Under the federal statute and federal and state regulations, "home" must be understood as an "actual, lived-in residence"; otherwise, an applicant could exclude any interest acquired after the claim for assistance arises based on the applicant's declared intent to make it a future home. Because the Burts neither lived in the Cleburne house when they applied for Medicaid assistance, nor lived in it during the period before their entry into the skilled-nursing facility, the value of their interest, acquired using Medicaid-available resources after their admission to the skilled-nursing facility, is not excluded.

Ms. Wallace responds that federal law permits an applicant to use resources to purchase a property interest and designate it as a future "home," if the applicant states an intent to live there in the future. This construction converts funds that qualify as "resources" at the time of the claim into assets that do not, but Ms. Wallace argues that the definition of "home" as a place of residence of the applicant at the time the claim arose makes Texas's Medicaid program more restrictive than the federal supplemental security income program.

**B**

We begin by examining the applicable federal law. "In determining the resources of an individual (and his eligible spouse, if

---

[20] 42 U.S.C. § 1382b(a)(1); *see also* 20 C.F.R. § 416.1212(b); 1 Tex. Admin. Code § 358.348(a).

7

any) there shall be excluded . . . the home (including the land that appertains thereto)."[21] The federal law does not define "the home." "When a term is left undefined in a statute, 'we will use the plain and ordinary meaning of the term and interpret it within the context of the statute.'"[22] "To determine a statutory term's common, ordinary meaning, we typically look first to [its] dictionary definitions . . . ."[23]

"[H]ome" is "one's principal place of residence: domicile,"[24] and "[a] place where one lives; a residence."[25] Accordingly, a home is the principal place in which one lives and resides, not merely a structure in which one possesses a partial ownership stake. At the time the Burts applied for Medicaid, they did not reside in the Cleburne house. Nor was the Cleburne house their principal residence or domicile during the preceding seven years. Under the plain language of the statute, the Cleburne house was not their "home." The Commission's interpretation is consistent with the plain meaning of the federal statute and no more restrictive than the federal supplemental security income program.

In urging the contrary, Ms. Wallace first observes that the statute does not explicitly require occupancy. To reside and live in a place,

---

[21] 42 U.S.C. § 1382b(a).

[22] *Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) (quoting *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 758 (Tex. 2020)).

[23] *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017) (citing *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011)).

[24] *Home*, Webster's Third New International Dictionary 1082 (2002).

[25] *Home*, The American Heritage Dictionary of the English Language 840 (5th ed. 2022).

however, one must occupy it. The statute does not provide an exclusion for real property or homes generally, but "*the* home."[26] The home connotes a singular location commonly understood to be the place one lives.

Ms. Wallace also counters that it is common for one to consider a property to be a "home" despite being unable to immediately move into it, as for example, when signing closing documents for a house or when a service member purchases a house while on duty abroad. Those examples feature two residences, one in which the person resides and another that the person intends to occupy or has occupied during the relevant time frame. Because the statute excludes "*the* home," an applicant must elect a principal residence to the exclusion of all others. Which residence of two qualifying residences may turn on the homeowner's view of which is the principal one, but both are owned before the applicant files a claim for Medicaid assistance. Absent ownership of multiple residences, "the home" is commonly understood to be the place one resides. The Burts' principal and only home was their rental house. It was not their daughter's Cleburne house, in which they purchased an interest using eligible Medicaid resources after their claim for assistance arose, then immediately deeded that interest back to her save a life estate.

Finally, Ms. Wallace argues that an occupancy requirement denies renters the preservation of a home after nursing care. This, she contends, contravenes Medicaid's purpose of promoting a return to

---

[26] 42 U.S.C. § 1382b(a)(1) (emphasis added).

independence.[27] The court of appeals rested its holding on this argument, noting that a renter needs a home upon discharge as much as a homeowner.[28]

The statute, however, returns a Medicaid applicant to the type of residence the applicant occupied before the claim for assistance arose. The federal government appropriates Medicaid funds to enable states "to furnish (1) medical assistance on behalf of . . . aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such . . . individuals attain or retain capability for independence or self-care."[29] The resources statute endeavors to calculate the funds available for care based on an applicant's living situation before the claim for assistance arises; it does not permit the applicant to change the nature of that residence (from renting to owning or from a real property interest to a home) by converting assets that otherwise are available to pay for the applicant's care once the need for that care arises.[30]

---

[27] *See id.* § 1396-1.

[28] 644 S.W.3d at 894.

[29] 42 U.S.C. § 1396-1.

[30] This is not the only Medicaid statute that requires residency. For Medicaid applicants residing in an institution, the purchase of a life estate in another's property is considered an improper transfer of assets unless the applicant "resides" at the life-estate property for at least one year after the date of the purchase. *Id.* § 1396p(c)(1)(A), (J).

One way Congress has sought to limit improper asset transfer and ensure recoverability of Medicaid funds[31] is by imposing a "look-back date," which is tied to the date the applicant files for Medicaid, to scrutinize eligibility.[32] As the look-back period illustrates, the period immediately preceding the applicant's claim is the relevant timeframe for determining eligibility.

Congress has sought to preclude artificial impoverishment, repeatedly narrowing Medicaid eligibility to minimize abuse of the program and to conserve government resources for those most in need.[33] "As always, our mandate is to ascertain and give effect to the Legislature's intent as expressed in the statutory language."[34] The home exemption prevents applicants from having to sell their homes to pay for their care; it does not authorize the conversion of available resources

---

[31] Federal law requires states to recover the costs of long-term care paid through Medicaid for certain categories of applicants from the applicant's estate. *See id.* § 1396p(b); 1 Tex. Admin. Code § 373.101.

[32] *See* 42 U.S.C. § 1396p(c)(1)(A), (B). The look-back period is 36 months or 60 months, depending on the circumstances. *Id.* § 1396p(c)(1)(B)

[33] Medicaid is for those "whose income and resources are insufficient to meet the costs of necessary medical services" and for "rehabilitation and other services to help such . . . individuals." *Id.* § 1396-1; *see also Lewis v. Alexander*, 685 F.3d 325, 333 (3d Cir. 2012) ("Individuals have gained access to taxpayer-funded healthcare while retaining the benefit of their wealth and the ability to pass that wealth to their heirs. Congress understandably viewed this as an abuse and began addressing the problem with statutory standards enacted in 1986."); *Ark. Dep't of Health & Hum. Servs. v. Ahlborn*, 547 U.S. 268, 291 (2006) ("Congress, in crafting the Medicaid legislation, intended that Medicaid be a 'payer of last resort.'" (quoting S. Rep. No. 99-146, at 313 (1985))).

[34] *Paxton v. City of Dallas*, 509 S.W.3d 247, 256 (Tex. 2017) (citing *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016)).

to make them unavailable after the claim for assistance arises. The resources calculation instead does the opposite, requiring liquidation of nearly all assets except a home. If an applicant does not own a home before entering care, then the exclusion does not apply.

## C

The Social Security Administration and the Commission have promulgated regulations designed to comport with the exclusion of the home from an applicant's resources.[35] When a statute is unambiguous, we apply its plain meaning and need not turn to an agency's interpretation.[36] The federal and state regulations in this instance, however, align with reading "home" to require residence before the claim for assistance arises.

The Code of Federal Regulations defines a "home" as "any property in which an individual . . . has an ownership interest and which *serves as the individual's principal place of residence*."[37] The federal

---

[35] The Commission is authorized to adopt rules regarding Medicaid's operation in Texas. *See* Tex. Hum. Res. Code § 32.021(c). Pursuant to that power, the Commission has promulgated regulations regarding the calculation of resources that follow federal statutory and regulatory standards. *See, e.g.*, 1 Tex. Admin. Code § 358.321(a), (b).

[36] *See Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) ("We give [unambiguous] statutes their plain meaning without resort to rules of construction or extrinsic aids. On the other hand, 'if a statute is vague or ambiguous, we defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute.'" (quoting *Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 853 (Tex. 2012))); *see also R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 634 (Tex. 2011) (Jefferson, C.J., concurring) ("We do not defer to agency interpretations of unambiguous statutes.").

[37] 20 C.F.R. § 416.1212(a) (emphasis added).

regulation thus contemplates current, not future, residency. Similarly, the Texas Administrative Code provides that the Commission "follows [the federal regulation] regarding the treatment of a home, except [the Commission] does not count the equity value of a home that *is the principal place of residence* of an applicant . . . if the home is in Texas, *and* the applicant or recipient occupies or intends to return to the home."[38] It requires that the home currently be the principal place of residence, coupled with an intent to return.

Residence is "the act or fact of abiding or dwelling in a place for some time."[39] The Burts did not principally abide or dwell in the Cleburne house. Rather, their principal place of residence before their claim for Medicaid assistance arose was a rental house; thereafter, it was a skilled-nursing facility. Because the Burts did not reside in the Cleburne house in the period before their claim for Medicaid assistance arose, it was not their principal place of residence. Their ownership interest was not concurrent with the Cleburne house serving as their principal place of residence, and therefore it is not an excludable "home" under the federal or state regulations.

Demonstrating this concept, the Code of Federal Regulations provides that "[i]f an individual . . . moves out of his or her home *without the intent to return*, the home becomes a countable resource because it

---

[38] 1 Tex. Admin. Code § 358.348(a) (emphases added).

[39] *Residence*, Webster's Third New International Dictionary 1931 (2002); *see also Residence*, Black's Law Dictionary (11th ed. 2019) ("The act or fact of living in a given place for some time.").

is no longer the individual's principal place of residence."[40] Likewise, the Texas Administrative Code provides that one's principal place of residence is excluded if "the applicant . . . occupies or *intends to return* to the home."[41] In other words, if an applicant moves out of his principal place of residence, he must intend to return to that home for it to remain excludable. A later developed "intent to return" to the Cleburne house does not bring the Burts within the exclusion because it was not their residence in the years preceding their Medicaid claim. In other words, the Burts' ownership, occupancy, and intent to return never coincided in the property before their claim for Medicaid assistance arose.

The regulations recognize exceptions that illustrate the statutory rule. For example, an individual who moves out of a principal place of residence with no intent to return because the individual is fleeing domestic violence may exclude it until the individual establishes a new principal place of residence.[42] This subsection does not support the notion that the Burts may maintain a home exclusion for a house they sold years earlier.[43]

---

[40] 20 C.F.R. § 416.1212(c) (emphasis added).

[41] 1 Tex. Admin. Code § 358.348(a)(1) (emphasis added).

[42] 20 C.F.R. § 416.1212(d).

[43] This is not a case about leaving a Medicaid applicant without a home. Presumably the Burts' daughter did not require her parents to transfer nearly all their worldly possessions to her (including a life insurance policy naming her as the beneficiary) to have a home, or to return to the property they occupied during the years before their claim arose. This instead is a case of generational wealth transfer without payment of medical debt—debt that ordinary citizens owe against the estate's assets before they inherit. The law limits government assistance to the truly needy and imposes strict limits on

14

Still another section of the federal regulations lends support to a construction requiring occupancy. Subsection (e)(1)—entitled "[p]roceeds from the sale of an excluded home"—permits an applicant to exclude the proceeds from the sale of an excluded residence if they are used within three months to purchase another home.[44] If one sells an excluded home and purchases a new home within three months, it is then "similarly excluded."[45] This allows Medicaid applicants to sell their houses, irrespective of their Medicaid application, so long as the proceeds are invested in a home within three months. This regulation preserves an existing exclusion; it does not create a new exclusion based on future occupancy. Rather, the regulation presumes occupancy of a residence before the claim for assistance arises.

Finally, while the regulations count property "that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance" as available resources, they do not conversely exclude available cash converted to purchase a home after the claim arises.[46] Collectively, the regulations align with the law that

---

eligibility. The dissent would saddle future generations with obligations to the few who undertake elaborate estate planning to impoverish their elderly parents, at least on paper, after the need for skilled-nursing care arises.

[44] *Id.* § 416.1212(e)(1).

[45] *Id.*

[46] *Id.* § 416.1201. Our holding does not interfere with Texas's ABLE account program or ABLE account holders' ability to purchase a home. ABLE accounts are accounts for qualifying disabled individuals. *Overview*, Texasable, https://www.texasable.org/about/#overview (last visited Apr. 29, 2024). Contrary to the dissent's discussion, a distribution from an ABLE account for Qualified Disability Expenses, including housing, is not included as an asset

does not permit post-claim conversion of eligible resources absent a recognized exception.

Ms. Wallace also relies on the Social Security Administration's Program Operations Manual System to support her argument that an applicant's subjective intent is all that matters. The Program Operations Manual is "used by Social Security employees to process claims for Social Security benefits."[47] It defines "[p]rincipal place of residence" as "the dwelling the individual considers their established or principal home and to which, if absent, they intend to return."[48]

The Manual does not have the force and effect of law; it is the statute that controls.[49] Written employee guidance cannot be used to contravene a statute. Even so, Ms. Wallace misapprehends the Manual. While the Manual uses "considers" in defining *principal* place of residence, it does not negate that one must reside in a house to include it among properties that can qualify as an "established or principal" home. As with absent service members, one may have more than one "dwelling" or residence, but the principal place of residence is the one

for eligibility purposes for programs like Medicaid. *See Frequently Asked Questions*, Texasable, https://www.texasable.org/faqs/ (last visited Apr. 29, 2024). If an individual with an ABLE account purchases and moves into a home using those funds, it is an excludable principal place of residence.

[47] *POMS Home*, Social Security Administration, https://secure.ssa.gov /apps10/poms.nsf/Home?readform (last visited Apr. 29, 2024).

[48] Social Security Administration, Program Operations Manual System SI 01130.100.A.2 (2023), https://secure.ssa.gov/apps10/poms.nsf/lnx/ 0501130100.

[49] *Combs*, 422 S.W.3d at 635 (noting that this Court does not defer to an agency interpretation that is "plainly erroneous or inconsistent with the language of the statute").

16

the individual considers his "established or principal" home.[50] Recognizing as much, the Manual acknowledges that "'intent to return' . . . applies only to the continued exclusion of property which met the definition of the individual's home prior to the time the individual left the property."[51] In other words, the property must be the applicant's principal place of residence before the applicant's departure with an intent to return to it for it to remain excludable. The Manual also provides that "[p]roperty ceases to be the principal place of residence as of the date that the individual left it with no intention of returning."[52] The Burts left the Cleburne house with no intention to return when they sold it to the Wallaces, living elsewhere for seven years. Accordingly, under the Manual, it had ceased to be their principal place of residence long before the claim for Medicaid assistance arose.

## D

Residency is a familiar concept in other areas of the law. While not controlling in the interpretation of a federal statute, we note that requiring physical presence, and not merely future intent, coheres with this Court's interpretation of residence in areas such as election law and

---

[50] In the section entitled "How to develop the principal place of residence," the Manual provides that "[a]bsent ownership in more than one residence *or evidence that raises a question about the matter*, assume that the alleged home is the individual's principal place of residence." Social Security Administration, Program Operations Manual System SI 01130.100.C.5.a (2023), https://secure.ssa.gov/apps10/poms.nsf/lnx/0501130100 (emphasis added). Here, the Burts did not reside in the Cleburne house, which raises a question about whether it was, in fact, their principal place of residence.

[51] *Id.* at SI 01130.100.C.7.c. (emphasis omitted).

[52] *Id.* at SI 01130.100.B.5.

17

civil procedure. For example, in *Mills v. Bartlett*, an election law case, we held that "residence cannot be determined by intention alone."[53] While subjective intent plays a role in determining primary residence, "action" is also a factor.[54] Ultimately, "[n]either bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide[,] at that moment the residence is fixed and determined."[55] Similarly, in *Owens Corning v. Carter*, a case regarding a statute that mandated dismissal of certain asbestos lawsuits brought by non-Texas residents, we held that "although intent is *necessary* to establish a permanent residence, it alone is not *sufficient* to establish a permanent residence."[56] The same holds true here. Intent is a necessary element of establishing a home, but intention alone is insufficient. It must coincide with presence at some point. The Burts declared their intent to principally reside in the Cleburne house, but their intent failed to coincide with their physical presence.

* * *

We hold that a Medicaid applicant's "home," for purposes of 42 U.S.C. § 1382b, is the applicant's principal place of residence before the claim for assistance arises, coupled with the applicant's intent to return to that residence in the future. The purchase of a property interest with Medicaid-available funds after the claim arises does not exclude that interest from the calculation of available resources. Because the

---

[53] 377 S.W.2d 636, 637 (Tex. 1964).

[54] *Id.*

[55] *Id.*

[56] 997 S.W.2d 560, 571 (Tex. 1999) (citing *Mills*, 377 S.W.2d at 637).

18

Commission did not err in calculating the Burts' eligibility for Medicaid, we reverse the judgment of the court of appeals and render judgment for the Commission.

Jane N. Bland
Justice

**OPINION DELIVERED:** May 3, 2024